SLT:BGK
F.#2010R02455/NY-NYE-665Z

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

12 m 714

- - - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR A         AFFIDAVIT IN SUPPORT
SEARCH WARRANT FOR:                           OF SEARCH WARRANT

THE PREMISES KNOWN AND DESCRIBED AS           (T. 21, U.S.C.,
Apple iMac Computer, Model A1312,              § 846)
Serial# QP0220PK5PE

- - - - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

  PATHIK R. LOTWALA, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

  Upon on information and belief, there is probable cause to believe that there will be found in:

  Apple iMac Computer, Model A1312, Serial # QP0220PK5PE,(hereafter, the "SUBJECT COMPUTER")

stored data, which may include names, addresses, telephone numbers, stored call logs, stored text messages, stored photographs and videos, stored e-mails, e-mail addresses and stored records, all of which constitutes evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 846, conspiracy to possess with intent to distribute

heroin. The source of your deponent's information and the basis for his belief are as follows:[1]

1. I have been a Special Agent with the DEA for approximately nine years. My information in this case comes from a review of DEA records, conversations with other agents, and my direct participation in the investigation.

I.  Background

2. Since approximately October 2008, the DEA office in Wichita, Kansas has been investigating a heroin trafficking organization. One of the targets of its investigation is JERMAINE WARD. In approximately September 2010, the DEA initiated a wiretap investigation and began intercepting calls to and from a telephone used by JERMAINE WARD (the "WARD TELEPHONE"). Based on calls intercepted over the WARD TELEPHONE, the DEA identified GUY CURTIS as a heroin supplier for JERMAINE WARD. Specifically, agents intercepted a conversation between GUY CURTIS and JERMAINE WARD on October 23, 2010, in which they discussed a heroin shipment to be sent from New York to Wichita for JERMAINE WARD. During this conversation, GUY CURTIS was communicating with JERMAINE WARD using telephone number (212)920-7712 (the "CURTIS TELEPHONE").

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not described all of the relevant facts and circumstances of which I am aware.

3

3. On April 12, 2011, DEA agents began intercepting wire and electronic communications over the CURTIS TELEPHONE pursuant to an order signed by the Honorable Sterling Johnson, Jr., United States District Court Judge, Eastern District of New York. On May 16, 2011, Judge Johnson authorized DEA agents to continue to intercept wire and electronic communications over the CURTIS TELEPHONE. Wire interception ceased on June 14, 2011.

4. The wire and electronic surveillance revealed episodes of physical violence by the CURTIS organization. For example, on April 17, 2011 (Session 2348), CURTIS discussed a retaliation shooting and the efforts CURTIS made to locate an individual CURTIS mistakenly believed was involved in an altercation between CURTIS and another person. This physical altercation involved a dispute over the selling of narcotics on Jamaica Avenue in Queens, New York. In this call, CURTIS stated to the caller, in part, "Not justified but he did that to me. The thing was... he wasn't going there to do that. Niggas knocked on the window and all that. Soon as they came into the joint and opened the shades. It was like we just went by and BAM, BAM, BAM. Actually we still don't know if nobody got hit cause the ambulance and all that shit was there. So we don't know what happened but they moved it on like..."[2/]

---

[2/] Not all relevant communications intercepted over the CURTIS TELEPHONE are described herein. Moreover, for those calls described, not all relevant portions of such conversations have been described. To the extent that quotations are used in the

5. Further, in another call on April 19, 2011 (Session 2837), GUY CURTIS and an associate of CURTIS discussed locating a woman who was previously shot at by the associate. As discussed above, CURTIS was involved in a physical altercation that involved a dispute over the selling of narcotics on Jamaica Avenue in Queens, New York. CURTIS believed that the woman discussed in this call was his assailant's girlfriend. During this call, CURTIS' associate informed CURTIS that the associate planned to follow the woman. The associate stated to CURTIS, in part, "The corner store across the street white bitch that I shot at that night, she's in the store. I trying to follow this Bitch. I going to follow her she in that store."

6. In addition, on April 27, 2011 (Session 5928), the CURTIS TELEPHONE received a text message from another member of CURTIS' crew. The message stated: "I got a hitman if niggsz want sumthin done." On April 27, 2011 (Session 5931), CURTIS replied, "I'll tallk to u in person." The CURTIS TELEPHONE also sent the following text message on April 12, 2011 (Session 423), "Don't Come in between me n my drugs."

7. On July 1, 2011, a grand jury sitting in the Eastern District of New York returned an indictment charging OMAR BERRY, MARCELYN BOURJOLLY, JR., STEFON CLARK, GUY CURTIS, DAVID

---

descriptions below, the quoted segments are based on line sheets and not final transcripts. Also, all dates and times are approximate and based on the monitoring equipment at the time the call was intercepted.

GOLDBERG, DELON HINES and ISHMAEL LAMBUS with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of Title 21, United States Code, Section 846.[3/] In January 2012, all the defendants plead guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. All the defendants have subsequently been sentenced to terms of imprisonment ranging from 60 to 78 months.

    8. On August 16, 2011, the Honorable Andrew Carter, Jr., United States Magistrate Judge, Eastern District of New York, signed a search warrant authorizing the search of the CURTIS TELEPHONE, which was seized from GUY CURTIS at the time of his arrest.[4/] Based, in part, on the evidence obtained from the search of the CURTIS TELEPHONE and on wire and electronic surveillance, I have learned that GUY CURTIS is the leader of "POV CITY," a violent heroin distribution organization based in the Jamaica section of Queens, New York and used the CURTIS TELEPHONE to communicate with DEVON DANIELS at telephone number

---

[3/] The SUBJECT COMPUTER was seized on July 7, 2011 from GUY CURTIS' residence. The Affiant has the SUBJECT COMPUTER in his possession for the Court's inspection.

[4/] A search of the CURTIS TELEPHONE revealed photographs of currency, drugs, guns, NYPD database check and intelligence. Attached hereto as Exhibit A is a copy of some of the photographs retrieved from the CURTIS TELEPHONE.

6

(646)515-6489 (the "DANIELS TELEPHONE").[5/]  Further, these communications revealed that DANIELS asked CURTIS for "any working revolver," money and on numerous occasions, to borrow CURTIS' vehicles.  I also learned from these communications that CURTIS inquired from DANIELS on how to get "gun shot residue off your hands," and CURTIS informed DANIELS that "I need u to clap a felon he always carrying a gun."  I also learned from these communications that DANIELS provided CURTIS with the use of an official NYPD parking plaque for CURTIS' vehicles and provided CURTIS with intelligence on fellow NYPD officers based on CURTIS' inquiry.

9.   In addition, these communications revealed that on April 29, 2011, CURTIS informed DANIELS that one of CURTIS' associates, ISHMAEL LAMBUS, was in the process of being arrested by NYPD.  DANIELS, while driving one of CURTIS' vehicles, immediately proceeded to the scene and surveilled the heroin drug arrest of LAMBUS.  Thereafter, DANIELS exited CURTIS' vehicle and identified himself to the NYPD arresting officers as an NYPD Officer.  At that time, DANIELS inquired from the arresting officers about matters concerning the arrest of LAMBUS.  Upon leaving the scene, DANIELS immediately reported that information to GUY CURTIS.

---

[5/]  DEVON DANIELS is the subscriber of the DANIELS TELEPHONE.

7

10. Further, these communications revealed that DANIELS provided CURTIS with DANIELS' bank account information. DANIELS' bank account was then used to facilitate financial transactions that involved drug proceeds. For example, after DANIELS first provided his account information to GUY CURTIS, CURTIS then provided this information to JERMAINE WARD, a distributer of CURTIS' heroin in Wichita, Kansas. Thereafter, WARD wired $3,500 to DANIELS' financial account as payment for heroin CURTIS provided to WARD. DANIELS then withdrew the drug proceeds and gave it to CURTIS.

11. In addition, I learned that DANIELS, when requested by CURTIS, improperly accessed the NYPD database in order to perform criminal background checks or to obtain license plate information for CURTIS. The requested information was then relayed back to CURTIS by DANIELS.

The April 17, 2011, Unauthorized Computer Access

12. For example, on April 16, 2011 at approximately 2:28 a.m., the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Eux 6142 red clk yah," (Session C-86462). At approximately 2:29 a.m. that day, the DANIELS TELEPHONE replied, "Aite." (Session C-86463). Based on my training and experience and the investigation that has been conducted thus far, I believe that CURTIS provided this license plate to DANIELS for the purpose of DANIELS searching it through

8

the NYPD database and providing CURTIS with the information concerning the owner of this vehicle.

13. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding any searches involving inquiries regarding license plate "EUX6142." That audit revealed that an inquiry for license plate "EUX6142," which accessed the NCIC database, was performed from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on April 17, 2011, at approximately 7:16 a.m. The inquiry was made under the password for Patrol Officer DEVON DANIELS' partner.

14. On April 17, 2011, the CURTIS TELEPHONE received a picture of the NYPD database screen which showed the name, age, address and other information regarding the registration and vehicle information associated with license plate "EUX6142. (IMG_2192.JPJ). Based on my training and experience and the investigation that has been conducted thus far, I believe that after DANIELS received the requested license plate from CURTIS, DANIELS searched the NYPD database under his partner's password. DANIELS then provided CURTIS with the information concerning the owner of this vehicle by sending to the CURTIS TELEPHONE a picture of the screen showing the results of the NYPD database search.

9

## II. Probable Cause to Search

15. On May 15, 2012, NYPD-IAB and DEA agents arrested DEVON DANIELS, pursuant to a arrest warrant issued by United States Magistrate Judge Lois Bloom, for intentionally accessing a computer without authorization or exceeding authorized access, in violation of Title 18, United States Code, Section 1030(a)(2)(B).

16. I believe that GUY CURTIS communicated with DEVON DANIELS using the SUBJECT COMPUTER. This is based the fact that on a June 13, 2011, the CURTIS TELEPHONE was intercepted receiving the following text message from DEVON DANIELS, "if it wont go through sent it to email tiptop031@gmail.com." (Session 19660). Based on my training, experience and the investigation that has been conducted thus far, I believe that DANIELS informed CURTIS to send electronic data to DANIELS' email account via the SUBJECT COMPUTER. The SUBJECT COMPUTER was found in the residence of GUY CURTIS during an execution of a search warrant at that premises on July 7, 2011. It has been in the custody of DEA since it was seized.

17. In my experience, individuals who are involved in narcotics trafficking typically use computers, such as the SUBJECT COMPUTER, and cellular telephones, such as the CURTIS TELEPHONE, to communicate with co-conspirators about their illegal activities and these computers and cellular telephones may contain names, addresses, telephone numbers, photographs,

10

videos, text messages, e-mails, e-mail addresses and other related information concerning conspiracy to import and possess with intent to distribute heroin and cocaine, in violation of Title 21, United States Code, Section 846.

18. I submit that there is probable cause to believe those records will be stored on the SUBJECT COMPUTER or storage medium, for at least the following reasons:

    a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the storage medium that is not currently being used by an active file - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task.

However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

19. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on this computer because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and

13

chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with

the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to

     understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

WHEREFORE, your deponent respectfully requests that a search warrant be issued authorizing DEA agents and their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described matter, to search the SUBJECT COMPUTER and to seize names, addresses, telephone numbers, stored call logs, stored text messages, stored photographs and videos, stored e-mails, e-mail addresses and stored records as more fully set forth in Attachment B, all of which constitutes evidence, fruits and instrumentalities of violations of Title 21, United States Code,

16

Section 846, conspiracy to possess with intent to distribute heroin.

Dated:     July 31, 2012
           Brooklyn, New York

_____
Pathik R. Lotwala
Special Agent
Drug Enforcement Administration

Sworn to before me this
31th day of July, 2012

_____
HON. JOAN     s/ Azrack
UNITED STAT
EASTERN DIS